**Gerald HILDAHL d/b/a Risque Book Store, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–164.**

Court of Criminal Appeals of Oklahoma.

June 4, 1975.

Don E. Gasaway, Woodson & Gasaway, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant, Gerald Hildahl, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Tulsa County for violation of 21 O.S. § 1040.51, Sale of a Magazine Which Shows Pictures or Photographs of Acts of Sexual Intercourse Between Persons. Punishment was assessed at a term of four (4) years in the state penitentiary and a fine of $15,000. From a judgment and sentence in conformance with said verdict the defendant has perfected his timely appeal.

The facts adduced at trial are as follows: On the 31st day of August, 1972, Raymond C. Kelly, a private citizen, at the request of the Tulsa District Attorney's office, entered the Risque Book Store, an adult bookstore located in Tulsa, and purchased a copy of a magazine entitled "Workbook of Adult Sexual Education" from the defendant. The witness testified that defendant acknowledged that he was the owner of the store and that he took the magazine from a file cabinet underneath the sale counter. The magazine contains sexually explicit photographs of persons engaged in sexual intercourse. The magazine was introduced into evidence and submitted to the jury for examination. The State then rested.

The defense called two witnesses. James C. Thomas, a professor of law at the University of Tulsa, testified that he had talked to many students and persons in the community about sexually explicit material and that in his opinion the magazine did not violate community standards. He further testified that he was familiar with sexually explicit material and that the magazine did not arouse his prurient interests. Harold E. Hill, a professor in the Department of Religion at the University of Tulsa, testified that prior to coming to Tulsa he had been a part-time consultant on the research done by Dr. Kinsey at the University of Indiana. He further testified that he was an ordained minister and used sexually explicit material in counseling couples. He further stated that the magazine complained of contained photographs of equal sexual explicitness as the popular book *"Joy of Sex"* and other materials which he used in his counseling. Hill stated that the magazine was of value since it was a plain, honest and straightforward description of what is accepted by psychologists and psychiatrists as factual. The magazine did not offend the witness and it was his opinion that such material

had never harmed anyone. Hill further testified that the magazine would cause no prurient desire in a mature adult. The defendant did not testify in his own behalf.

■ The defendant's first proposition in error urges that 21 O.S. § 1040.51 under which the information was filed, trial conducted and the judgment and conviction rendered was at the time of the filing of the information unconstitutional in light of the rulings of the United States Supreme Court of June 21, 1973, in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419, and its companion cases. The pertinent portions of § 1040.51 are as follows:

> "Any person who knowingly buys, sells, barters, traffics in, or causes to be delivered or transported in Oklahoma, any picture, moving picture, series of pictures, drawing, diagram or photograph of any person or animal or caricature thereof in an act or acts of sexual intercourse or unnatural copulation shall be deemed guilty of a felony, and shall be punished by a fine of not to exceed Twenty-five Thousand Dollars ($25,000.00), or by imprisonment for not to exceed fifteen (15) years, or by both such fine and imprisonment. . . ."

In our recent case of State v. Combs, Okl.Cr., 536 P.2d 1301, this Court held that § 1040.51 as authoritatively construed in said case met the constitutional requirements of Miller and its companion cases. This Court further held that "acts of sexual intercourse or unnatural copulation" were acts properly proscribed by State obscenity statutes under Miller if depicted or described in a patently offensive way.

■ The defendant in his brief complains that the retroactive application of the Miller standards to the defendant in this case violates the constitutional ex post facto law proscription, citing Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894. However, the Supreme Court has recently held in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887,

41 L.Ed.2d 590 (1974), that a retroactive application of the Miller standards to obscenity statutes did not purport to make criminal that conduct which had not previously been thought criminal, as was true in Bouie, supra. The Miller requirements instead add a "clarifying gloss" which makes the meaning of the statute "more definite" in its application to obscenity prosecutions. Therefore, claims of vagueness and lack of fair notice must fail. See also, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and Hess et al. v. State, Okl.Cr., 536 P.2d 362 recently decided by this Court.

■ It is the further opinion of this Court that § 1040.51 has always met the requirements of notice and due process in sufficiently defining that material which was proscribed by the statute. As stated in Roth, supra, all that is required is that the statutory language convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. Therefore, for all the reasons set out above, it is our opinion that § 1040.51 as authoritatively construed is constitutionally sound and that no substantial right of this defendant is violated by the application of the Miller standards for judging obscenity in the instant case and prior to our decision in State, supra. See Hamling, supra.

■ The defendant's next proposition urges that the trial court committed reversible error in failing to suppress introduction of the material because no adversary proceeding to make a preliminary determination of and focus searchingly on the issues of obscenity as required by Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745, was held prior to the issuance of a warrant for the arrest of the defendant. We disagree. In State, supra, and in Cherokee News & Arcade, Inc. v. State, Okl.Cr., 533 P.2d 624, this Court specifically held that a prior adversary hearing is not required when allegedly obscene material is obtained by purchase and no seizure is involved.

■ The defendant next contends that the burden of proof was improperly placed on the defendant to prove his innocence rather that upon the State to prove his guilt. In support of his contention defendant ·argues that the only evidence of obscenity submitted by the State was the magazine itself and cites Ramirez v. State, Okl.Cr., 430 P.2d 826, which held that the mere introduction of allegedly obscene material into evidence is not sufficient to sustain a conviction. However, in McCrary v. State, Okl.Cr., 533 P.2d 629, this Court expressly overruled *Ramirez*; citing Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, and Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492. It is not a mandatory prerequisite to establish a prima facie case that the State present witnesses to establish the existence of the Miller standards. The introduction of the material and submission of same to the jury is sufficient.

Defendant further argues that Instruction 4 and Instruction 5 of the trial court, when taken together, shifted the burden of proof from the State to the defendant. In this particular case we agree. The instructions complained of are as follows:

"INSTRUCTION 4: You are instructed that under the laws of the State of Oklahoma, any person who knowingly buys, sells, barters, traffics in, or causes to be delivered or transported in Oklahoma, any picture, moving picture, series of pictures, drawing, diagram or photograph of any person or animal or caricature thereof in an act or acts of sexual intercourse or unnatural copulation shall be deemed guilty of a felony."

"INSTRUCTION 5: You are instructed that in support of his plea of not guilty the defendant claims that the material introduced as States Exhibit No. 1 is exempt from the law set forth in Instruction No. 4.

In this connection, you are instructed that said law does not prohibit the sale of such material:

1. Pursuant to medical prescription or for use in any recognized school of medicine or veterinary science for educational purpose.

2. If the average person, applying contemporary community standards would not find the material, taken as a whole, appeals to the prurient interest.

A. 'The person, applying contemporary community standards' is determined by the material's impact on an average person, rather than a particularly susceptible or sensitive person— or indeed a totally insensitive one.

B. Prurient is defined by a Funk & Wagnalls dictionary as '1. Impure in thought and desire; lewd. 2. Having lustful cravings or desires. 3. Longing desirous.'

3. If the depiction, otherwise prohibited by the State Law, of sexual conduct, is not so depicted in a patently offensive way.

4. If the material, taken as a whole, is of serious literary, political, artistic or scientific value.

If, after considering all of the evidence, whether introduced by the State or the Defendant, you find that the sale of State's Exhibit No. 1 is not prohibited as being within one or more of the exceptions herein related, or if you have a reasonable doubt in this regard, it is your duty to resolve this case in favor of the defendant and acquit him."

■ The impact of both instructions when considered as a whole tends to place the burden of proof on the defendant since it implies that any person who sells material containing pictures of persons engaged in sexual intercourse is guilty of a felony *unless* he can show that he comes within an exception set out in Instruction 5. This is not the law. The State must show by introduction of the material itself that acts of sexual intercourse or unnatural copulation are depicted or described in a patently offensive way and that the material offends all other Miller standards of obsceni-

ty. It is therefore the opinion of this Court that submission of Instruction No. 5 to the jury in the form set out above constitutes error.

The defendant next urges that the trial court erred in failing to allow the defendant a change of venue due to the inordinate amount of publicity surrounding the Tulsa County District Attorney's "war on smut". This Court has made a thorough examination of the voir dire of the jury and finds from the record that no juror had a fixed opinion as to the guilt of the defendant. No juror was challenged for cause and the defense exercised only three peremptory challenges. It is therefore our opinion that the trial court did not abuse its discretion in overruling defendant's motion for a change of venue. See Robertson v. State, Okl.Cr., 503 P.2d 896.

The defendant's last proposition in error urges that improper and inflammatory comments by the District Attorney during closing argument denied defendant a fair trial by arousing the passion and prejudice of the jury. With this contention we agree. The record shows that during closing argument District Attorney Fallis made the following statement, to-wit:

"We are not against sex. I am a married man. I have got children, too, Don. I have got a five year old and I have got a nine year old and I'll be darned, I'll kill the first man—or woman—if I could get my hands on them, that ever exposes my child at a young age to this."

Such a statement is beyond the bounds of reasonable comment on closing argument. It is not supported by the evidence and is clearly made for the purpose of arousing the passion·and prejudice of the jury. It is highly improper.

The District Attorney also made the following statement during closing argument, to-wit:

"And then counsel says, isn't it strange that Mr. Fallis would be up here trying this case himself. What's so strange about me doing my job? My God, that's why you hired me. Maybe it's just a little bigger—maybe counsel is right—maybe there's more to this trial. He said murderers are running rampant. Yes, we have a bunch of homosexual murders in Houston. We have had them other places. Homosexuality. Counsel said—this is interesting, isn't it—"

Such a statement is again quite inappropriate. A comment upon homosexual murderers in Houston is not supported by any evidence admitted during the trial. The comment can only be made for the purpose of arousing the passion and prejudice of the jury.

The record further reflects that the District Attorney made the following remark during closing argument, to-wit:

"This world is lacking in discipline and why? Because this is a big trial, it's not just a trial of this man, it's a trial of an industry. That's what it is. SECS Press, an industry. It wasn't published in Tulsa, it was published in Los Angeles, California—this particular one—with no author designated. It's an industry. Do you think this man is the only one on trial? . . ."

Such a comment is clearly erroneous. The information under which the defendant is charged sets out the sale of a specific magazine by a specific person, the defendant, on a specific date. The defendant is the only person on trial and to state otherwise in such a blatant manner is highly improper.

It is therefore the opinion of this Court for all the reasons stated above the defendant was denied the right to a fair and impartial trial and the judgment and sentence appealed from should be, and the same is hereby reversed and the cause is remanded for a new trial consistent with the terms and tenure of this opinion.

BRETT, P. J., and BUSSEY, J., concur.