STATE of Oklahoma ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Dwight C. KOURI, Respondent.

SCBD No. 3734.

Supreme Court of Oklahoma.

Sept. 15, 1992.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Gary Rife, Oklahoma City, for respondent.

## OPINION

ALMA WILSON, Justice:

The respondent lawyer was accused by the complainant Bar Association of professional misconduct sufficient to warrant professional discipline. The respondent subsequently submitted his resignation pending disciplinary proceedings to this Court. He moves to make the effective date of resignation retroactive to the date of his suspension for non-payment of dues, July 9, 1991. He also moves to withhold publication.

The Bar Association opposes making the date of resignation retroactive and withholding publication of the disposition of this case, but joins in the request of the respondent that this Court approve his resignation pending disciplinary proceedings. We accept the resignation of the respondent with the effective date of resignation being the date the resignation was signed by the respondent, July 9, 1992. We order that this opinion be published.

The respondent resigned as a shareholder from a law firm in Tulsa on May 22, 1990. As chairman of the real estate section of the firm, he had direct access to a bank account for use by the real estate section of the firm in conducting real estate closings. In Count I of the Complaint, filed January 10, 1991, the Bar Association alleges that the respondent was contacted in Nevada, after he had resigned, concerning a check written on the firm's real estate account for $2,000.00 in the respondent's handwriting and made out to C.A. Long. According to the Complaint, the respondent apologized for using the account and claimed that he had used the funds in handling a legal matter for his father, who was a client of the firm. He stated that the funds were advanced in order to facilitate closing of an oil and gas lease that involved his father. The respondent promised to contact his parents and see that the funds were replaced, and shortly thereafter, the firm received a check from the respondent's father with a note on the memo that it was a loan. The policy of the firm was that any amount over $100.00 was not to be advanced on behalf of a client without the concurrence of at least two partners.

Count II alleges that the law firm reviewed the entire bank account and determined that there were other irregularities. It states that the respondent wrote a check on the firm account in the amount of $6,800 to himself, endorsed the check, deposited it in his own account and that he caused the check stub to indicate that the check was made payable to the law firm to hide his taking the money. When contacted about it by a paralegal who noticed the discrepancy between the check stub and the check, the respondent claimed that the money was a loan by the firm and had been approved by the senior partner. The complainant alleges that this representation was false and made to conceal the respondent's misappropriation of funds from the firm.

Count III of the Complaint alleges that the law firm represented a client in a real estate transaction and was to receive a payment of $2,500.00 from the client for services rendered. The respondent handled the transaction for the firm on behalf of the client. The client paid the firm in two payments. The first payment was in the amount of $1,200.00 and was credited to the client's account. The second payment was made payable to the respondent in the amount of $1,300.00 and was intended as payment of the balance of the fee to the

law firm. The Bar Association alleges that the respondent endorsed the check, deposited it into his own bank account and used the funds for personal purposes. He never credited the client's account for receipt of the second payment. He then approved writing off the outstanding $1,300.00 balance of the client's account receivable file.

Counts IV and V are contained in the Amended Complaint, filed November 1, 1991. Count IV alleges that the respondent delivered a check in the amount of $5,145.57, drawn on the law firm's client trust account and in the respondent's handwriting, to lawyers for Frontier Federal Savings & Loan as payment of the respondent's home mortgage arrearage. This was done without the knowledge of the law firm. Count V alleges that on the respondent's last day of employment, he wrote a check on the same trust account in the amount of $1,516.43 to the First National Bank of Broken Arrow for payment of a personal note he had due at the bank on that date. This was also done without the knowledge of the law firm.

■ On July 9, 1991, this Court ordered that the respondent be suspended from membership and the practice of law for failure to pay Bar Association dues. One year later the respondent filed with this Court his application for an order approving his resignation pending disciplinary proceedings. In that application the respondent asks that this Court make his resignation retroactive to the date of his suspension for failure to pay his dues. The respondent asserts that this Court has on prior occasions imposed discipline upon a lawyer retroactively to an earlier date of an interim suspension and this Court has also accepted resignations and approved the same retroactively to an earlier date of interim suspension, in an effort to align the resignation with the first date the individual was no longer able to practice law.

The Bar Association argues that the cases cited by the respondent do not support applying a retroactive date to his resignation. The Bar Association attached copies of letters sent to the respondent discussing the option of resignation in August and November of 1991, and early in June of 1992. The respondent has known that the option was available to him during this entire time. The record reveals that the respondent waited until three days before the hearing on the merits to file his resignation.

Although the respondent cites cases where resignations were given retroactive effect, he does not show how any of these cases are applicable to the facts before this Court. This Court has held that the effective date of a resignation is upon filing the resignation with the Executive Director, and we have approved resignations effective the date they were executed. *State ex rel. Oklahoma Bar Ass'n v. Perkins*, 757 P.2d 825, 827 (Okla.1988), and *State ex rel. Oklahoma Bar Ass'n v. Coleman*, 723 P.2d 266 (Okla.1986). This Court has even held in cases involving criminal convictions that a resignation date should be applied retroactively to the date on which a lawyer was suspended from the practice of law pending an appeal from a criminal conviction. *State ex rel. Oklahoma Bar Ass'n v. Page*, 754 P.2d 878, 880 (Okla.1988). But the suspension by the respondent had nothing to do with the investigation being made by the Bar Association. The respondent would have been eligible for reinstatement at any time he chose to pay his Bar Association dues. Accordingly, we decline to make the resignation retroactive to the date the respondent was suspended for failure to pay his Bar Association dues.

■ The respondent has also requested that this Court withhold publication because he is no longer a member of the Bar Association since he did not file an application for reinstatement within one year from the date he was suspended by this Court.[1]

---

1. Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.1991, ch. 1, app. 1, art. VIII, § 5. Section 5 provides: "A suspended member who does not file an application for reinstatement within one year from the date he

is suspended by the Supreme Court for nonpayment of dues shall cease automatically to be a member of the Association and the Board of Governors shall cause his name to be stricken from the membership rolls. Thereafter, if he

He also cites the detrimental effects this could have upon his family. Essentially the respondent is arguing that this Court has lost jurisdiction of the matter because the respondent had been automatically removed as a member of the Bar Association.

By the time Article VIII, § 5 took effect in the respondent's case, the investigation by the Bar Association had already been made and a hearing date had already been set. We will not allow an attorney to circumvent the consequences of his acts by use of § 5 under these facts. This Court has long held that in attorney disciplinary matters it has inherent power apart from statute to decide such matters. *State Bar Comm'n v. Sullivan*, 35 Okla. 745, 131 P. 703, 707 (1912). Suspension for nonpayment of dues does not deprive this Court of jurisdiction over the lawyer. This Court may discipline a suspended lawyer for behavior that violates the Rules of Professional Conduct. Because the publishing of such proceedings serves as a guide and warning to attorneys in this state concerning actions meriting discipline and because it also serves the Bar Association as precedent for future prosecutions of disciplinary actions, we are determined to continue to publish such matters. Although publication may embarrass or distress a lawyer's family members, such distress is an unfortunate consequence of the actions taken by the lawyer.

We find that the Resignation Pending Disciplinary Proceedings of the respondent substantially complies with Rule 8.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A, and that the resignation should be approved. Respondent has agreed to reimburse expenses incurred by Complainant in the investigation of this matter in the amount of $443.47.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the respondent's Resignation Pending Disciplinary Proceedings be, and the same is hereby approved.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the re-

spondent's name be stricken from the roll of attorneys; that he make no application for reinstatement to membership in the Oklahoma Bar Association prior to the lapse of five (5) years from the date his resignation was executed, July 9, 1992; and that respondent pay costs in the amount of $443.47 within thirty (30) days from the date hereof.

All the Justices concur.

desires to become a member of the Association, he will be required to make application for reinstatement, as provided in Rule 11 of the Rules Governing Disciplinary Proceedings."